UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANGELA J ABELL-FLEENER, )
)
Plaintiff, )
)
vs. ) No. 1:14-cv-01117-SEB-TAB
)
CAROLYN W. COLVIN, )
)
Defendant. )

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

The parties appeared by counsel March 17, 2015, for an oral argument on Plaintiff's brief in support of appeal. Set forth below is the Court's oral ruling from the bench following that argument. This ruling recommends that the decision of the Commissioner be affirmed, and that Plaintiff's brief in support of appeal be denied.

THE COURT: Okay, back on the record. I will now give you my decision in this case.

This case, unfortunately, has been winding itself through the adjudication process for almost five years. In addition, the Plaintiff raises six issues in this appeal, so some extended discussion is necessary.

The case began on June 16, 2009, when Plaintiff, Abell-Fleener, filed an application for a period of disability and disability insurance benefits, as well as for Supplemental Security Income, alleging disability beginning on May 30, 2006, due to histoplasmosis, posttraumatic stress disorder, anxiety disorder, and depressive disorder.

After initial denials, an ALJ held a hearing on April 14, 2011, at which Plaintiff was represented by counsel. On June 6, 2011, the ALJ denied Plaintiff's claim for benefits. On

July 19, 2012, the Appeals Council remanded the case to the administrative law judge for further proceedings.

A remand hearing was held on November 27, 2012, before the same administrative law judge, at which Plaintiff was again represented by counsel. On January 22, 2013, the ALJ again denied Plaintiff's claim for benefits. On May 3, 2014, the Appeals Council upheld the ALJ's decision and denied the request for review. This appeal followed.

The Commissioner does not contest the Plaintiff's recitation of facts, which the Court generally accepts and adopts. To summarize these facts, the Court notes that Abell-Fleener was 39 years old at the time of the alleged onset date and has an eighth grade education. She has past relevant work as a warehouse worker and a landscape worker. Plaintiff alleged problems with histoplasmosis, posttraumatic stress disorder, anxiety disorder, and depressive disorder, bipolar disorder, and agoraphobia.

The record contains treatment notes and other documents showing that Plaintiff suffers from panic disorder, major depression, and posttraumatic stress disorder, has poor attention span and concentration, and has memory problems. A medical expert testified at Plaintiff's hearing, however, that Plaintiff exaggerated her symptoms, that there was evidence of malingering and manipulation, that Plaintiff once forged a doctor's signature, and that records showed some concern about misuse of medication. Record at pages 54 through 58.

The record also contains information regarding Plaintiff's vision limitations. Plaintiff received a diagnostic impression of POHS, which is presumed ocular histoplasmosis syndrome, and underwent ocular steroid injections of both eyes. Record at 480. A subsequent vision exam confirmed the diagnosis of ocular histoplasmosis and noted that Abell-Fleener would have trouble with jobs requiring good binocular vision. Record at 742. However, the record also

contains a medical opinion concluding Plaintiff's vision problems did not affect her ability to perform basic work functions. Record at 509.

Plaintiff presents six issues for appeal, which I will restate as follows:

Number one, whether the ALJ failed to comply with the remand order by using nearly the same RFC in the remand hearing decision as was assigned in the original hearing decision;

Number two, whether the ALJ erred by insisting upon objective evidence of mental illness;

Number three, whether the ALJ improperly discredited Plaintiff's credibility based on alleged noncompliance with treatment, given that Plaintiff sometimes lacked the finances to fill a couple of her prescription medications;

Number four, whether the ALJ erred in failing to reconcile the difficulties Plaintiff had with her vision with the finding that she can do a variety of jobs;

Number five, whether the ALJ erred in failing to abide by Social Security Regulation 06-03p and taking into consideration that Plaintiff is considered disabled by Medicaid;

And, number six, whether the VE gave conflicting testimony, thus casting doubt over the reliability of any of the VE's responses, resulting in a finding that is not supported by substantial evidence.

In considering these issues, the Court will uphold an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Because the Commissioner is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact, the Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled. *Butera v. Apfel*, 173 F.3d 1049,

3

1055 (7th Cir. 1999). Even if substantial evidence would support an opposite conclusion, the Commissioner's decision must be upheld if it is supported by substantial evidence. *Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).

The first two issues Plaintiffs present on appeal involve the ALJ's treatment of evidence regarding Plaintiff's mental functioning. Therefore, I will address these issues together. In my view, following remand from the Appeals Council, the ALJ undertook an exhaustive and detailed discussion that reasonably discussed the evidence and explained why the ALJ determined that Plaintiff was not disabled.

Plaintiff contends that the ALJ ignored the Appeals Council's order because he did not give a sufficiently different RFC in the instant decision than he had in the decision which the Appeals Council remanded. But the Appeals Council did not require a different RFC finding; rather, the Appeals Council obligated the ALJ to provide appropriate rationale with specific references to the evidence supporting the assessed limitations and to explain why certain mental restrictions were found, and to correlate those restrictions to Plaintiff's problems with concentration, persistence, or pace. Record at 112.

The Appeals Council noted that a more comprehensive discussion was required. Record at 111. In other words, the Appeals Council sought more articulation from the ALJ, and that is what the ALJ provided.

As set forth in pages 22 through 33 of the ALJ's decision, and as explained at pages 4 through 10 of the Commissioner's brief, the ALJ devoted many pages to recounting Plaintiff's treatment history. The ALJ explicitly addressed the specific issue of concentration, persistence, or pace in response to that order at multiple points in the decision. Record at 23 and 32 through 33.

The ALJ accurately summarized Plaintiff's care by stating that her symptoms waxed and waned, but her presentation was largely consistent and her treatment regimen, as well, while also noting that Plaintiff was not wholly compliant with treatment recommendations. Record at 27.

The ALJ detailed Dr. Dixon's findings in 2009 that Plaintiff exhibited poor effort and presented a "fake-bad" response style. Record at 26 through 27 and 42 through 86. The ALJ also set forth his interpretation from Examiner Dr. Davidson's 2011 report that Plaintiff's condition was not as severe as her medical records reflected. Record at 28 and 739 through '40.

The ALJ evaluated the medical opinion evidence as well. He noted that four state agency reviewing psychologists agreed that from 2009 until 2011, the Plaintiff could, "function in a competitive setting," or perform simple tasks and relate superficially with others. Record at 28 and 516, 528, 538, 755, and 761.

The ALJ also considered the opinion of testifying medical expert Dr. Brooks and the opinions of treating physicians Drs. McGovern and Wilson. Plaintiff takes issue with the ALJ's choice to give more weight to the opinion of a testifying medical expert. Plaintiff contends that the ALJ improperly focused on whether objective medical evidence existed relating to Plaintiff's mental limitations. However, the ALJ explained at length why he credited Dr. Brooks. Record 29 through 30.

The ALJ noted that Dr. Brooks reviewed the record in its entirety and was able to discern discrepancies in Plaintiff's claim for disability. Dr. Brooks noted that Plaintiff had exaggerated her symptoms, forged a doctor's signature, and had also observed that the records documented a concern about misuse of medication. Record at 58.

Dr. Brooks had an opportunity to review the evidence which neither Dr. McGovern nor Dr. Wilson saw. Record at 61. The ALJ noted that Dr. Brooks' opinion was largely consistent

5

with that of four reviewers and with the GAF scores assessed by the two examining psychologists. Record at 30. These facts support the ALJ's decision to give the most weight to Dr. Brooks' opinion.

The ALJ also considered Dr. Wilson's lack of explanatory detail. The ALJ noted that Dr. Wilson simply filled out a binary check box form and otherwise simply declared the Plaintiff was unable to work. Record at 28 through 29, 545 through 46, and 552. The ALJ appropriately noted that these were "conclusory statements" and that "neither statement explained why [plaintiff] could not perform work." Record at 29.

Dr. Wilson's opinion was not consistent with his own treatment notes. In particular, the ALJ observed that while Plaintiff's symptoms waxed and waned, she had never been found to have been "totally unable to function." Record at 29.

Contrary to the Plaintiff's claim, the ALJ was not holding Plaintiff to an improper standard with this comment. Rather, the ALJ was holding Dr. Wilson accountable for consistency. I agree with the Commissioner that the ALJ was just noting that at no time during the treatment relationship had Dr. Wilson given any indication that Plaintiff lacked the ability to perform those functions. This was a reasonable critique.

The ALJ also noted that significant other evidence also contradicted or failed to support Dr. Wilson's opinion, and noted that Dr. Wilson had not been able to review the entire record. Record at 29. The ALJ also explained that the contradictory opinions of the four reviewing psychologists, the concerns of the examining psychologists, and the opinions of Dr. Brooks all contradicted Dr. Wilson's opinion. Regard at 30.

It is true that after listing multiple reasons for not giving Dr. Wilson's opinion controlling weight, the ALJ noted the lack of any objective medical evidence. Plaintiff asserts this focus on

6

objective evidence in the context of a mental impairment is error and warrants remand. I disagree. First, the ALJ did not indicate, as Plaintiff suggests, that depression and anxiety could never be disabling. Mental healthcare does not require the acceptance of a patient's allegations, and a diagnosis is, by itself, not proof of disability.

The ALJ properly considered the lack of legitimate objective medical evidence, test results, and clinical observations, for example, supporting Dr. Wilson's opinion. As the ALJ noted, the treatment records from Anderson did not show dramatic changes in treatment recommendations or even in Plaintiff's presentation, apart from typical waxing and waning. And nothing indicated that Plaintiff was unable to perform the various functions Dr. Wilson noted.

Similarly, the ALJ pointed to the objective medical evidence from examiners Drs. Davidson and Dixon, who tested Plaintiff and otherwise made relevant clinical findings, all of which, according to Dr. Brooks, indicated that Plaintiff was not so limited and was not, in fact, giving true presentations to her treaters. That's in the record at 26 through 28 and 58. In this regard, the ALJ appropriately considered the role of objective medical evidence as it pertained to the weight afforded to Dr. Wilson's opinion.

The ALJ's analysis as to Dr. McGovern was similarly reasonable. The ALJ noted the length of the treatment relationship and then explained that Dr. McGovern appeared to rely on the opinion of Dr. Wilson, the defects of which necessarily carry over to Dr. McGovern's. The ALJ also noted that Dr. McGovern indicated that Plaintiff was fully compliant with treatment, which the record revealed to be untrue. Transcript at 29 and 673. The mere fact that Dr. McGovern did not have the accurate picture of Plaintiff's history that she thought she did reasonably undermined her opinion.

The ALJ also recognized that Dr. McGovern's opinion was conclusory. Dr. McGovern did nothing more than state Plaintiff's diagnosis, list a few symptoms, and then conclude that Plaintiff could not function in a workplace setting or hold down a job. Record at 673.

The ALJ also explained that the contradictory opinions of the four reviewing psychologists, the concerns of the examining psychologists, and the opinions of Dr. Brooks all contradicted Dr. McGovern's opinion. In short, the ALJ used the remand from the Appeals Council to conduct a thorough and appropriate review of Plaintiff's mental impairments and the resulting limitations. In this regard, it is noteworthy that while the Plaintiff contends the ALJ failed to comply with the remand order, the Appeals Council subsequently found no reason to review the ALJ's opinion. Record at 1.

Turning to the issue of credibility, I find that the ALJ appropriately justified his credibility findings. The ALJ reasonably relied upon the medical expert's testimony, which showed that Plaintiff was misrepresenting the severity of her mental impairments. The ALJ also appropriately noted that Examiner Dr. Dixon found Plaintiff to be a malingerer, and that examiner Dr. Davidson also questioned the validity of her presentation. The ALJ also considered Plaintiff's activities of daily living, noting that they did not support a claim of disability, and noted that medication was effective in controlling Plaintiff's symptoms. Transcript at 31.

The ALJ further considered other precipitating or aggravating factors. The ALJ also considered Plaintiff's noncompliance with treatment. But, contrary to Plaintiff's allegation, this is not error. The ALJ acknowledged that Plaintiff sometimes explained away her noncompliance by claiming an inability to afford medication. Record at 31. But her medication noncompliance

8

was not always related to a failure to take medication. Indeed, the ALJ explicitly cited to a progress note in which Plaintiff was noted to be taking too much Xanax. Record at 26 and 539.

Second, the ALJ's discussion was not limited to medication compliance. For example, the ALJ explained that Plaintiff did not attend therapy regularly; and when she did attend, she was chastised for not doing her homework. In sum, the ALJ reasonably considered Plaintiff's adherence to treatment and did not improperly fail to recognize that she sometimes did not take medication because she could not afford it.

The Court next turns to the issue regarding Plaintiff's vision problems. The ALJ concluded Plaintiff's visual problems did not affect her ability to perform basic work functions. Record at 21. I find this conclusion supported by substantial evidence. This was not only consistent with the opinions of Drs. Sands and Whitley, but also with that of Dr. Roush, who wrote that, "Despite her visual limitations, Plaintiff had limitations, but should be able to do most work," record at 509; and Dr. Sands, who affirmed Dr. Roush's opinion, record at 537 and 763.

The ALJ explained that Plaintiff had only mildly decreased visual acuity and did not complain about vision problems as a basis for disability. Record at 21. And the ALJ noted that the opinion of an examining physician in 2009 predated treatment and subsequent improvement in her vision. Record at 21. While there certainly is evidence in the record that supports vision impairment, the ALJ reviewed the evidence and reasonably relied upon the opinions of at least three physicians, who opined that Plaintiff could not do most work in spite of her vision problems. It is not this Court's role to reweigh the evidence, so I find no error as to this issue.

The next issue Plaintiff raises is that the ALJ erred by failing to take into account that Plaintiff was eligible for Medicaid. Defendant offered two cases in support of her position that the ALJ was not required to make any findings about the relevance of Plaintiff's Medicaid

9

eligibility. Unfortunately, Plaintiff filed no reply brief in response to these cases and in response to Defendant's argument.

It does appear that in *Castillo v. Astrue*, 2012 WL 4049259 at *8, (N.D. Ind. Sept. 12, 2012), a case cited to by the Commissioner, the Court rejected Plaintiff's argument and explained that Medicaid eligibility in Indiana is not a straightforward medical determination. The Court found no violation of Social Security regulation 06-03p, where the ALJ did not discuss the Plaintiff's Medicaid eligibility.

See also *Bullard v. Astrue*, 210 WL 779454 at *15, (S.D. Ind. Feb. 26, 2010), another case cited to by the Commissioner in which the Court found it determinative that the record did not contain an actual decision granting Medicaid benefits during the relevant time frame. The Court thus found the ALJ had not violated Social Security ruling 06-03p by not discussing how he had considered the Plaintiff's receipt of Medicaid benefits.

Similarly, the Plaintiff here has not argued that the record contains any decision granting her Medicaid benefits or explaining the basis for any award as required by the courts. Based on the record before me, I decline to find that the ALJ committed reversible error in this regard.

Finally, Plaintiff argues that the testimony of the vocational expert, Robert Barber, at the two administrative hearings was so inconsistent as to make that testimony unreliable. Specifically, this relates to the testimony regarding Plaintiff's ability to return to past relevant work. Thus, Plaintiff argues, to the extent the ALJ relied on the VE's testimony, the decision is not supported by substantial evidence.

However, even assuming this constitutes error, I find any such error to be harmless. Renewed questioning of the VE which would establish either that Plaintiff cannot perform her

past work, as the ALJ already found, or that she can, in which case she was -- she would be found not to be disabled. In these circumstances, remand would not make any sense.

As the Commissioner points out, the ALJ's decision at step four worked in Plaintiff's favor. Plaintiff has not shown unreliability in the VE's testimony about the relevant issues, such as the number of jobs in the national economy that someone with Plaintiff's vocational profile could perform. Thus, I find any error in this regard to be harmless. For these reasons, the decision of the Commissioner should be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated: 3/31/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Ashley D. Marks
HANKEY LAW OFFICE
adm@hankeylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Carole J. Kohn
US SOCIAL SECURITY ADMINISTRATION
carole.kohn@ssa.gov